# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**WIERS FARM, INC.,**

      **Plaintiff,**

**v.**                                **Case No.  8:09-cv-1742-T-30TBM**

**WAVERLY FARMS, INC., et al.,**

      **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon LSQ's Motions for Summary Judgment (Dkts. 132 and 133) and the responses in opposition.  The parties stipulate that LSQ's motions are moot due to the resolution of their claims/settlement (Dkt. 166), except for the claims LSQ asserts against Defendant Warner V. June d/b/a W.J. Produce.  The Court, having considered the motions, responses, record evidence, and being otherwise advised in the premises concludes that LSQ's motion for summary judgment on the issue of its status as a bona fide purchaser should be denied and LSQ's motion for summary judgment on the issue of Warner June's breach of contract should be granted.

## BACKGROUND

This action arises under the Perishable Agricultural Commodities Act of 1930 as amended 7 U.S.C. §499e(c)(2) ("PACA").  Specifically, Wiers Farm, Inc. ("Wiers Farm") filed a complaint against Waverly Farms, Inc. ("Waverly Farms"), Guy Wortelman, Kathy Wortelman, and G. Gene Thompson, alleging that they had violated PACA.  Several other

creditors alleging rights under PACA, including Majestic Produce Sales Co. ("Majestic"), W.J. Produce, and Anthony Gangemi, Inc. ("Anthony Gangemi"), filed complaints-in-intervention in this matter.  Wiers Farm, W.J. Produce, Majestic, and Anthony Gangemi allege that they qualify as trustees under PACA by virtue of the sale of perishable agricultural commodities, i.e., watermelons, to Waverly Farms.

LSQ Funding Group L.C. ("LSQ") also intervened and filed cross claims against the PACA trust creditors alleging priority in payment from the remaining assets of Waverly Farms and its receivables.  LSQ is in the factoring business, which involves purchasing accounts from businesses with whom it has formed a contractual relationship.  On or about July 17, 2008, LSQ and Waverly Farms entered into a factoring agreement.

This Court entered a preliminary injunction order which stated that the parties agreed to allow LSQ to collect and hold the outstanding receivables, pending a determination of priority from the Court.  The collected funds were deposited in an escrow account and total $450,000.

Subsequently, LSQ moved for summary judgment on the issue of whether the factoring agreement LSQ entered into with Waverly Farms constituted purchases of the accounts, which would give LSQ a superior interest over the PACA trust assets.  LSQ also moved for summary judgment on Count II of its cross-claim against W.J. Produce as an account debtor of Waverly Farms.  In connection with goods that W.J. Produce purchased from Waverly Farms, W.J. Produce executed a written document (the "No Offset Agreement") acknowledging, among other things, the assignment of the accounts arising

from the sale of such goods to LSQ, and agreeing to pay all accounts to LSQ without any right of deduction or set-off.

After LSQ filed its motions for summary judgment, LSQ, Waverly Farms, and all of the PACA trust creditors, except W.J. Produce, entered into a stipulated agreement that provided that the PACA trust creditors, except W.J. Produce, would assign their claims against Waverly Farms to LSQ and the Court would then enter final judgments in favor of LSQ, as the assignee of the PACA trust creditors, except W.J. Produce, and against Waverly Farms.

Thus, LSQ's motions for summary judgment remain pending solely on the issues of LSQ's priority to the PACA trust assets (which will determine the priority between LSQ and W.J. Produce) and LSQ's breach of contract claim against W.J. Produce.

## DISCUSSION

### I.     Summary Judgment Standard of Review

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action

will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.    LSQ's Motion for Summary Judgment on the Issue of Priority

LSQ moves for summary judgment on the issue of its priority to the PACA trust assets. It contends that the factoring agreement and the actions taken by LSQ and Waverly

Farms after the execution of the factoring agreement demonstrate that it is a purchaser of Waverly Farms' accounts.  W.J. Produce argues that the factoring agreement constituted a lending transaction because LSQ did not truly assume the risk of loss for the accounts.  The Court agrees that the factoring agreement was a lending transaction, and not a bona-fide purchase for value.

PACA trusts were created by Congress to correct the perceived inequity to unsecured produce sellers caused by financing arrangements between produce purchasers and their lenders, by giving the sellers precedence over the claims of secured creditors.  *See Overton Distribs., Inc. v. Heritage Bank,* 340 F.3d 361, 365 (6th Cir. 2003).  PACA trustees "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities."  7 C.F.R. § 46.46(d)(1).  The interpretation of PACA trust interests is guided by general trust principles to the extent there is no conflict with the statute.  *Consumers Produce Co. v. Volante Wholesale Produce, Inc.,* 16 F.3d 1374, 1381 (3d Cir. 1994).  And, as is the case with owner-operator escrow funds, PACA does not preclude the commingling of trust funds or the conversion of trust property into a different form of assets.  *Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d 591, 598 (4th Cir. 2010).

In *Nickey Gregory,* the sellers of perishable agricultural commodities brought suit under PACA to recover sums owed to them for the sale of produce to Robison Farms, LLC, a bankrupt produce distributor.  The defendant, AgriCap, LLC, was a finance company that provided secured financing to Robison Farms for working capital. *Id.* at 594.  The plaintiffs

sought to disgorge the proceeds of Robison Farms' accounts receivable held by AgriCap as collateral to secure repayment of monies advanced by AgriCap to Robison Farms. *Id.* The plaintiffs claimed that PACA created a trust for their benefit over the proceeds of their produce, including the accounts receivable that Robison Farms used for collateral in its arrangement with AgriCap, and, therefore, they possessed a superior interest in the proceeds held by AgriCap. *Id.* The Fourth Circuit Court of Appeals agreed, concluding that the risk of non-payment of the accounts receivable did not pass to the purchaser, AgriCap. In essence, the factoring agreement was a loan agreement that breached the PACA trust.

The factoring agreement at issue here similarly did not provide for the true "purchase" of the accounts receivable by LSQ. LSQ did not agree to assume the risk of nonpayment on all accounts. Credit approval could be withdrawn at any time by LSQ under certain situations. LSQ had the option of having Waverly Farms re-purchase certain accounts. LSQ was granted a security interest in the collateral. The factoring agreement defined instances of a default by Waverly Farms and, in the event of default, the risk of non-payment remained with Waverly Farms. And, similar to the factoring agreement in *Nickey Gregory*, the factoring agreement had a provision wherein Waverly Farms warranted that it had no knowledge that any of the account debtors were insolvent or that bankruptcy was imminent. Waverly Farms was also required to indemnify LSQ against any loss or expense arising from the factoring agreement.

Accordingly, the provisions in the factoring agreement demonstrate that LSQ did not purchase Waverly Farms' accounts receivable.  Thus, the accounts receivable and the proceeds remained PACA trust assets.

For these same reasons, LSQ cannot show that it qualifies as a bona-fide purchaser ("BFP"), because it did not take the PACA trust assets "for value."  Even if property was transferred in breach of trust, general trust principles permit a bona-fide purchaser to retain such property.  *C.H. Robinson Co. v. Trust Co. Bank, N.A.,* 952 F.2d 1311, 1313 (11th Cir. 1992); Restatement (Second) of Trusts §284(1).  "Like any transferee, secured lenders will be forced to return trust property they have received unless they can establish their status as bona fide purchasers, i.e., that they received the property for value and without notice of breach of trust."  *Robinson,* 952 F.2d at 1315 (footnote omitted).  "Ordinarily, the transfer of trust assets in satisfaction of an antecedent debt is not for value. '[I]f the trustee transfers trust property in consideration of the extinguishment of a pre-existing debt or other obligation, the transfer is not for value.'"  *Id.* at 1314 (alteration in original) (*quoting* Restatement (Second) of Trusts § 304(1)).  Although an exception to this principle exists if the property transferred is money, "transfers of trust property such as accounts receivable are not for value under traditional trust law."  *Id.* at 1315.

For the reasons succinctly set forth by the Fourth Circuit in *Nickey Gregory Co.,* LSQ cannot avail itself of the bona-fide purchaser defense because it is not a bona-fide purchaser "for value":

AgriCap contends that it received Robison Farms' accounts receivable "for value" because each time Robison Farms transferred a receivable to AgriCap, AgriCap paid Robison Farms 80% of the receivable's face value. This argument, however, fails for the same reason that AgriCap is incorrect to characterize the transaction as a sale rather than a loan. AgriCap did not *purchase* the account receivable but merely held it as collateral for the 80% loan and as collection agent. It therefore was not a purchaser for value, having never become owner of the receivable.

*Nickey Gregory Co.,* 597 F.3d at 606. *See also Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1069 (2d Cir. 1995) (lender holding security interest in PACA dealer's accounts receivable was not a bona-fide purchaser for value so as to give it priority over PACA suppliers' claims).

Accordingly, LSQ's motion for summary judgment on the issue of priority must be denied and the Court concludes, as a matter of law, that LSQ does not have priority over the PACA trust beneficiaries to the PACA trust assets.

### III.   LSQ's Motion for Summary Judgment on Its Breach of Contract Claim

LSQ moves for summary judgment on Count II of its cross-claim against W.J. Produce. LSQ contends that the record is undisputed that W.J. Produce acknowledged the assignment of Waverly Farms' receivables in the amount of $128,372.96 to LSQ and agreed to not assert any affirmative defenses of set-off or recoupment against LSQ. W.J. Produce does not dispute that it signed the June 5, 2009 letter, acknowledging the receivables in the amount of $128,372.96, but argues that Danny Letsinger of Waverly Farms told Warner June of W.J. Produce that the June 5, 2009 letter merely confirmed their earlier agreement that Waverly Farms would advance $100,000 to W.J. Produce and W.J. Produce could either pay the $100,000 back to Waverly Farms or have the amount charged back against watermelons

Waverly Farms purchased from W.J. Produce.  W.J. Produce contends that Danny Letsinger confirmed this agreement <u>after</u> Warner June received the June 5, 2009 letter from LSQ, which was sent on behalf of Waverly Farms.

The Court concludes that the record is undisputed that W.J. Produce acknowledged that it would pay the invoices totaling $128,372.96 to LSQ without recoupment, set-off, defense, or counterclaim.  And the record is also clear that LSQ did not hold Letsinger as an agent of LSQ.  The record is devoid of any evidence that LSQ authorized Letsinger to modify the June 5, 2009 letter.  Nor is there any evidence that LSQ permitted Letsinger to make representations on LSQ's behalf or bind LSQ in any way.  For this same reason, any claim W.J. Produce would have against Letsinger for fraudulent inducement would not apply to LSQ.

Accordingly, LSQ's motion for summary judgment on Count II of its cross-claim against W.J. Produce is granted in the amount of $128,372.96.  Although W.J. Produce questions the amount of LSQ's damages, this is the amount that is clearly stated in the June 5, 2009 letter, which W.J. Produce acknowledged.

It is therefore ORDERED AND ADJUDGED that:

1.      LSQ's Motion for Summary Judgment on the issue of entitlement (Dkts. 132) is hereby DENIED.

2.      LSQ's Motion for Summary Judgment on its breach of contract claim against W.J. Produce (Dkt. 133) is hereby GRANTED.

3.      The CLERK is directed to enter a judgment in favor of LSQ Funding Group,

L.C. and against Warner V. June d/b/a W.J. Produce in the amount of $128,372.96.

**DONE** and **ORDERED** in Tampa, Florida on March 31, 2011.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-1742.LSQmsjs132and133.frm